UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA
2005 AUG 19 P 2:28

BY DEPUTY CLERK

| | |
|---|---|
| JIM E. CLARK, MICHAEL V. CLEGG IV, AND RAVEN CONSTRUCTION OF LOUISIANA, L.L.C. | CIVIL ACTION NO. 05-1041-D-M2 |
| | DIVISION |
| VERSUS | MAGISTRATE |
| DAVID SCOTT PETERSON, WILL KAPAVIK, AND ASSOCIATED CONCRETE CONTRACTORS, INC. | |

COMPLAINT

The Complaint of Jim E. Clark ("Clark"), Michael V. Clegg IV ("Clegg") and Raven Construction of Louisiana, L.L.C. ("Raven"), states:

PLAINTIFFS

1.

Clark is a person of the full age of majority domiciled in East Baton Rouge Parish, State of Louisiana.

2.

Clegg is a person of the full age of majority domiciled in East Baton Rouge Parish, State of Louisiana.

3.

Raven is a Louisiana limited liability company domiciled and maintaining its principal place of business in East Baton Rouge Parish, State of Louisiana.

0099-2531-CAS

JP- summons issue

DEFENDANTS

4.

Made defendant herein is David Scott Peterson ("Peterson"), a person of the full age of majority, domiciled in the State of Texas.

5.

Made defendant herein is Will Kapavik ("Kapavik"), a person of the full age of majority, domiciled in the State of Texas.

6.

Made defendant herein is Associated Concrete Contractors, Inc. ("Associated"), a Texas corporation domiciled and maintaining its principal place of business in Texas, authorized to transact business in Louisiana. Kapavik owns Associated.

JURISDICTION

7.

There is complete diversity between the Plaintiffs domiciled and maintaining their principal place of business in the State of Louisiana, and Defendants domiciled and maintaining their principal place of business in the State of Texas.

8.

The amount in controversy exceeds $75,000.

FORMATION OF RAVEN

9.

On January 2, 2001, Clark and Clegg formed Ring Construction, L.L.C. ("Ring"), a Louisiana limited liability company. Steve Ring was employed to serve as President of Ring, and he was in charge of its daily operations. Ring successfully bid on a few construction projects, but

0099-2531-CAS

there were conflicts between Steve Ring and Ring's members, Clegg and Clark, due to differences in management style and business practices.

10.

Steve Ring agreed to resign from his employment with Ring, but would not permit Ring to continue to use his name. It was agreed that Ring's business would wind down and a new company (Raven) would be formed to complete the work under Ring's remaining contracts.

11.

On February 13, 2003, Raven was formed by Clegg, Clark, and Kapavik, with each member making an initial capital contribution of $101,000. The parties never agreed that Peterson would own a membership interest in Raven, and Peterson has never made any capital contributions to Raven.

12.

At the time of the formation of Raven, Kapavik claimed he was involved in a divorce proceeding in Texas. For this reason, Kapavik requested that his membership interest in Raven be put in Peterson's name and that Peterson act as his mandatary, exercising all rights under Kapavik's membership interest in Raven. Kapavik stated that he would be the beneficial owner of the membership interest at all times, and that he would be obligated directly to Raven and its other members.

13.

In all transactions affecting Kapavik's interest and membership rights in Raven, Peterson has acted under Kapavik's direction and with his full knowledge and consent.

0099-2531-CAS

14.

Upon Kapavich's recommendation, Peterson was appointed President of Raven and was initially responsible for its daily operations. Peterson was an employee of Associated prior to working for Raven.

15.

Without the knowledge of Clegg or Clark, Peterson remained on Associated's payroll and received benefits from Associated the entire time he was employed by Raven. While employed by Raven, Peterson made decisions under the direction and control of Kapavik and solely in the best interests of Kapavik and Associated. Kapavik used Peterson to gain unfair advantage over Clegg and Clark, and to profit from Raven both directly and indirectly through Associated.

PINNACLE BURIED DEBRIS CLAIM

16.

Shortly after Peterson took over the daily operations of Raven, Peterson presented Associated's change order in the amount of $277,000 for extra costs Associated claimed related to buried debris found on the Pinnacle Subdivision Project in Baton Rouge, Louisiana.

17.

Associated's sub-contract for soil preparation, foundation, and concrete work on the Pinnacle Subdivision Project provided that Associated assumed the risk for the condition of the soil and any buried debris encountered while performing the work.

18.

At the time Peterson presented Associated's change order, Associated's claim for extra costs due for buried debris had already been refused by both Raven and the owner, and the work under Associated's sub-contract had been completed for almost a year.

19.

Peterson recommended to Clark that Associated's change order be approved and paid. Peterson represented to Clark that the owner had agreed to approve the change order and pay for the extra work, knowing that the Raven and the owner had already refused to pay the extra costs related to buried debris. Peterson also represented that Kapavik would repay the $277,000, if the owner did not approve and pay Raven's change order passing on the additional amount paid to Associated. Even though the owner has refused to approve a change order and pay the additional costs for buried debris to Raven, Associated has refused to repay the $277,000 after numerous demands.

20.

Peterson, Kapavik, and Associated are liable *in solido* to Raven for the sum of $277,000 (the "Pinnacle Buried Debris Claim").

### LANDING PROJECT CLAIM

21.

Peterson signed the contract for the Landing Project in Houma, Louisiana without the consent and approval of Clegg and Clark. The contract was signed in the name of Ring, even though Ring was winding down its business and the work was to be performed by Raven. Peterson had no authority to execute the contract on behalf of Ring. After learning about the general contract and receiving assurances of Peterson that the Landing Project would be profitable, Clegg and Clark agreed that Raven would proceed with the work under the general contract.

22.

Peterson obtained no competitive bids for the dirt, foundation and concrete work on the Landing Project. The schedule of values for the Landing Project showed a price for the dirt,

0099-2531-CAS

foundation and concrete work which the owner obligated to pay. Without approval of Clegg and Clark, Peterson signed a sub-contract with Associated to perform the dirt, foundation and concrete work for a price that exceeded the amount shown on the schedule of values by $880,000.

23.

Peterson executed the sub-contract with Associated under the direction of Kapavik and for the sole benefit of Kapavik and Associated.

24.

While it performed its work on the Landing Project, Associated submitted and Peterson approved certificates for payment and change orders on the Landing Project for materials Associated did not provide and work Associated did not perform.

25.

After completing the sub-contract work on the Landing Project, Associated improperly filed a lien in the public records with a forged signature, making a claim against Raven for the balance of the price under the sub-contract even though it never performed work and/or provided materials in the amount claimed. When the forgery was discovered, Associated untimely filed a lien several months after the lien period expired.

26.

In the event that Raven is required to make any payment to Associated on its claim for the balance of the price on the sub-contract for the Landing Project, then Kapavik and Peterson are liable, *in solido*, for any amount paid to Associated in excess of the amount shown on the schedule of values, or in the alternative, for any additional amount paid to Associated for work performed and materials provided on the Landing Project (the "Landing Project Claim"). To the

extent that Associated profited from the actions of Peterson and Kapavik, it is liable to Raven for the amount due on the Landing Project Claim.

## RAVEN LOAN CLAIM

27.

On November 20, 2003, Raven executed a promissory note with Regions Bank ("Regions") in the principal amount of $450,000, representing loan no. 75407879001 (the "Raven Loan"), to obtain operating capital required to complete ongoing work and to cover losses suffered by Raven.

28.

The Raven Loan was secured by a certificate of deposit in the amount of $450,000 pledged by Clark as collateral.

29.

On November 25, 2003, Clegg, Clark, and Peterson, as Kapavik's mandatary, executed an agreement confirming that each member was liable for one-third of the Raven Loan, and in the event that one or more of the members was required to make payment to Regions, then in such event each member agreed to reimburse (with interest at the rate of the Raven Loan) the other members, so that each member would pay an equal portion of the principal and accrued interest on the Raven Loan.

30.

Kapavik agreed to pay his share of the Raven Loan, and Peterson executed the documents for him claiming that Kapavik could not sign them due to the pending divorce proceeding.

31.

The Raven Loan was renewed by Regions on March 16, 2004, and it matured on July 14, 2004.

32.

Since Raven was unable due to its financial condition to pay or renew the Raven Loan when it matured on July 14, 2004, Clark paid the Raven Loan. Clegg reimbursed Clark for his share of the $150,000. Kapavik has refused to pay $150,000, his share of the Raven Loan.

33.

In the alternative, if Peterson was not authorized as the mandatary of Kapavik to execute the documents and obligate Kapavik thereon, then Peterson personally guaranteed the Raven Loan and he is personally liable to Clark for the sum of $150,000.

34.

As a result of the payment made by Clark to Regions on the Raven Loan, Clark is legally and conventionally subrogated to the rights of Regions against Kapavik and/or Peterson. Clark is entitled to recover from Kapavik, or in the alternative, Peterson, the sum of $150,000.

35.

Kapavik and Peterson have failed to reimburse Clark after amicable demand, and Clark is entitled to judgment against Kapavik, or in the alternative, against Peterson, in the principal amount of $150,000, plus interest from the date the Raven Loan was paid to Regions, until paid, at the rate of interest of the Raven Loan (the "Raven Loan Claim").

36.

The agreement executed by the members of Raven also provides that if any member was required to employ counsel to enforce rights under the agreement, then the member would be entitled to recover reasonable attorney's fees, court costs, and other collection costs. Clark is entitled to recover his attorney's fees and litigation costs from Kapavik and Peterson.

BREACH OF FIDUCIARY DUTY AS MEMBER AND MANAGER

37.

In the Article of Organization executed on February 13, 2003, the management of Raven was reserved to the members, including Clegg, Clark, and Kapavik, acting through Peterson.

38.

At all times, Kapavik and Peterson, as Kapavik's mandatary, stood in a fiduciary capacity to Raven and its other members, Clegg and Clark, under La. R.S. 12:1314. Kapavik and Peterson had an obligation to discharge their duties in good faith, with due diligence, care, judgment, and skill which an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner they reasonably believed to be in the best interest of Raven.

39.

Kapavik and Peterson, acting as Kapavik's mandatary, have never withdrawn as members or managers from Raven.

40.

The acts alleged in this Complaint were committed by Peterson and Kapavik to profit, and to gain benefits and advantages that Associated, Kapavik and Peterson were not entitled to receive, and that Associated, Kapavik and Peterson would not have received except for the breach of their fiduciary duties and obligations to Raven.

41.

As a result of the breach of their fiduciary duties and obligations owed to Raven and its members, Peterson and Kapavik are obligated to account to Raven and its members for any profit, advantage, or benefit that they received either directly or through Associated without the informed consent of a majority of the uninterested members of Raven, including the amount

claimed by Raven, Clegg and Clark on the Raven Loan Claim, Pinnacle Buried Debris Claim, and the Landing Project Claim.

CAPITAL CONTRIBUTIONS CLAIM

42.

To cover the shortfalls in Raven's operating capital, Clegg and Clark have made loans and/or capital contributions to Raven to permit it to continue to operate, perform its obligations, and complete the work under the pending contracts, including the Landing Project.

43.

Kapavik has refused to make loans to Raven and/or to pay his capital contributions to Raven, and Kapavik now owes total capital contributions to Raven in the amount of $314,633.02 ("Kapavik Capital Contributions").

44.

To the extent that Clegg and Clark have made loans and/or capital contributions to Raven to cover Kapavik's one-third share, Clegg and Clark are legally and conventionally subrogated to the rights of Raven against Kapavik, and they are entitled to seek reimbursement of the Kapavik Capital Contributions.

45.

In the event that the court determines that Kapavik is not a member of Raven or that Peterson was not authorized to act as Kapavik's mandatary, then Peterson is liable as a member of Raven to pay the Kapavik Capital Contributions.

WHEREFORE, Clark, Clegg and Raven pray for judgment herein in their favor and against Peterson, Kapavik, and Associated, in solido, for all amounts that the court determines are reasonable under the circumstances, including attorney's fees, interest from the date each amount became due, or in the alternative, from date of judicial demand, and all costs.

0099-2531-CAS

BY ATTORNEYS:

GUGLIELMO, MARKS, SCHUTTE,
TERHOEVE & LOVE
320 Somerulos Street
Baton Rouge, Louisiana 70802-6129
Telephone: (225) 387-8330
Facsimile: (225) 387-8230


By: _____
Charles A. Schutte, Jr.
Bar Roll Number 11846
Attorneys for Jim E. Clark and Raven Construction of Louisiana, L.L.C.


*Michael V. Clegg IV*
Michael V. Clegg
(Bar Roll No. 4192)
8714 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: 225-923-1055
Facsimile: 225-923-0955
In Proper Person

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Jim E. Clark, Michael V. Clegg IV, and Raven Construction of Louisiana, L.L.C.

(b) County of Residence of First Listed Plaintiff  **East Baton Rouge Parish**
(EXCEPT IN U S PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Charles A. Schutte, Jr., Guglielmo, Marks, Schutte, Terhoeve & Love
320 Somerulos Street, Baton Rouge, LA 70802-6129 (225) 387-8330

## DEFENDANTS
David Scott Peterson, Will Kapavik, and Associated Concrete Contractors, Inc.

County of Residence of First Listed Defendant  **McLennan County, Texas**
(IN U S PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U S Government Plaintiff
- ☐ 2 U S Government Defendant
- ☐ 3 Federal Question (U S Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl Ret Inc Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Section 1332

Brief description of cause
Claims between members and managers of limited liability company arising from contracts.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE
DOCKET NUMBER

DATE  08/19/2005
SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # 167   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____